## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION


**John Chabria, *et al*.,**

      **Plaintiffs,**

**-V-**
                                    **Case No. 2:06-CV- 00543**
                                             **JUDGE SMITH**
                                         **Magistrate Judge Abel**

**EDO Western Corporation,**

      **Defendant.**


## OPINION AND ORDER

Plaintiffs John Chabria ("Chabria"), Zenix, Inc. ("Zenix"), and Zenix Ltd. (collectively "Plaintiffs"), have brought this action seeking payment of approximately $1,154,000.00 in unpaid royalties.  Plaintiffs assert New York common law causes of action for breach of express contract, breach of implied duty to act in good faith, promissory estoppel, fraudulent inducement and fraud.  Defendant EDO Western Corporation ("EDO") has moved for dismissal of all claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. 21).  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant EDO's Motion to Dismiss.

## I.  FACTS

For purposes of ruling on Defendant's Motion to Dismiss, the Court accepts as true the well-pleaded facts set forth in the Amended Complaint.

In 1998, Zenix was a leading developer, manufacturer and seller of high-frequency microwave component parts to the defense, aerospace and telecommunications industry.  (Am. Compl. ¶ 1).  Prior to December 9, 1998, Plaintiff Chabria was the CEO of Zenix. *Id*.  Defendant EDO is a defense contractor with its headquarters in New York City and its manufacturing facilities in Salt Lake City, Utah. (Am. Compl. ¶ 5).

In June of 1998, representatives of Defendant EDO approached Plaintiff Chabria to solicit the acquisition of Zenix by EDO. (Am. Compl. ¶ 8).  During the summer of 1998, EDO representatives presented a proposal to Plaintiff Chabria for EDO to acquire Zenix's assets for the sum of $2,000,000.00 and represented that EDO was a company that had been in business for years and would continue to market produce and sell the Zenix product line in order to generate the revenue to pay the full amount due for the acquisition of Zenix's assets.  (Am. Compl. ¶ 12).  Defendant EDO representatives told Plaintiff Chabria that EDO was not in the practice of acquiring businesses to shut them down. (Am. Compl. ¶ 14).  EDO representatives further represented that it had performed market research and, based on that research, EDO could guarantee that it would keep the Zenix product line in the marketplace to generate enough revenue to pay the full amount. (Am. Compl. ¶ 15).  Later in 1998, Plaintiff Chabria attended a meeting at EDO headquarters in New York City where he was again assured of the $2,000,000.00 price, that EDO would keep the Zenix product line in operation in order to generate the full amount, and even that EDO would spend $6,700,000.00 after purchasing Zenix in order to promote, sell and produce Zenix products. (Am. Compl. ¶ 16-17).

When news of Defendant EDO's negotiations with Plaintiff Chabria reached the microwave component industry, Plaintiff Chabria received a matching $2,000,000.00 offer from one of Zenix's customers, GHz Technologies, to purchase Zenix's assets. (Am. Compl. ¶ 19). Relying on Defendant EDO's previously discussed representations, Plaintiff Chabria declined GHz's offer and agreed to enter an asset purchase agreement with Defendant EDO. (Am. Compl. ¶ 21).

On December 9, 1998, Plaintiffs and Defendant EDO became parties to an Asset Purchase Agreement ("Agreement") by which Defendant EDO contracted to purchase "substantially all of the assets" of Zenix, Inc. (*See* Am. Compl., Ex A).  The Agreement stated that the purchase price for the assets shall be $669,107.85. (Am. Compl., Ex A at 2.1). Defendant EDO paid this amount to Plaintiffs plus $130,892.15 to Zenix's equipment suppliers to pay off existing equipment leases. (Am. Compl. ¶ 24-25).  The Agreement also required Defendant EDO to pay Plaintiffs a royalty in the amount of five percent of the gross sales from the Zenix product line. (Am. Compl., Ex A at 2.4(a)).  This obligation terminated "at such time the aggregate amount of Royalty paid to [Plaintiffs] equals $1,200,000. *Id.*  Under the Agreement, Seller was required not to compete with Defendant EDO for six years after the closing of the sale. (Am. Compl., Ex A at 6.4).

Plaintiffs allege that after the execution of the Agreement, Defendant EDO's representatives continued to represent and promise Plaintiffs that EDO would continue to market, produce and sell the Zenix product line so that EDO could make the promised $1,200,000.00 in royalty payments. (Am. Compl. ¶ 27).

Prior to the Agreement, the Zenix plant in Columbus, Ohio supplied the critical microwave components for radar systems in the AWACS aircraft used by the U.S. Air Force,

U.S. Navy and NATO Fleet. (Am. Compl. ¶ 29).  In June of 1999, over Plaintiff Chabria's objections,  Defendant EDO closed the Zenix Columbus plant and moved all the equipment to Salt Lake City.  (Am. Compl. ¶ 30).  Because the Salt Lake City facility was not ready or equipped for manufacturing at the time the Columbus plant was closed, manufacturing was stopped.  (Am. Compl. ¶ 31).  This resulted in the total disruption of production and deliveries of products to former Zenix customers.  (Am. Compl. ¶ 34).

Additionally, Defendant EDO, over Plaintiff Chabria's warnings about the negative impacts on production capability, decided to change production formulas and processes and to dispose of an estimated $500,000.00 worth of finished inventory and an estimated $200,000.00 worth of custom-made tooling, fixtures, dyes, and molds located in Columbus. (Am. Compl. ¶ 32).  Zenix's former customers responded by demanding that Defendant EDO use the original Zenix formulations and processes to manufacture the critical components, but Defendant EDO refused. (Am. Compl. ¶ 35).  Consequently, high-volume orders were cancelled. *Id.*

Around this same time, at Defendant EDO's direction, Plaintiff Chabria generated orders of over $20,000,000.00 worth of new requests for quotations from Zenix's customers for microwave product, but EDO's Salt Lake City plant was not properly equipped or staffed to provide the customers with sample products. (Am. Compl. ¶ 33).  Consequently, the customers chose other vendors.  *Id.*

In February, 2002, without notification to Plaintiff Chabria, Defendant EDO began its plan to remove the Zenix product line from production. (Am. Compl. ¶ 36).  In an internal memorandum dated February 20, 2002, Defendant EDO observed the downturn in the market and discussed options for responding to the downturn including a "power down strategy" in which the Zenix line would not be permanently shut down, but would be temporarily taken off of

4

the market.  (Am. Compl. ¶ 38).  In considering these options, one EDO representative noted that "there could be another $1,164k in royalty commission due to John [Chabria] depending on your view of the purchase agreement." *Id*.

In a May 2, 2002 letter, Defendant EDO notified Plaintiff Chabria that his employment would end on June 9, 2002, and reminded him not to compete until December 9, 2004. (Am. Compl. ¶ 40).

On June 25, 2002, an e-mail sent by an EDO employee confirmed that one advantage of the "power down" or "cold storage" of the Zenix line would be that Defendant EDO "will not have to deal with EDO's liability to John Chabria, since technically, the business is not closed." (Am. Compl. ¶ 41).

On or about July 18, 2002, Defendant EDO sent a letter to customers of the Zenix line informing the customers that the line "will not be available to the market until further notice." (Am. Compl. ¶ 42).  From August 2002 through October 2002, Defendant EDO's representatives continued to represent and promise Plaintiff Chabria that EDO would continue to market, produce, and sell the Zenix product line so that it could make the remaining royalty payments. (Am. Compl. ¶ 43).

Thereafter, Defendant EDO dedicated space formerly used to produce Zenix products to produce a different line. (Am. Compl. ¶ 44).  Defendant EDO also shut down the evaluation and testing laboratory for Zenix's microwave products, discontinued microwave research and development activity and laid off or transferred Zenix production personnel to other departments.  *Id*.  Finally, all of Zenix's customers were notified that the Zenix microwave products would not be made available after August of 2002. *Id*.

In October of 2005, Defendant EDO had not resumed production of the Zenix product line and Plaintiff Chabria demanded payment of $1,154,000.00.  (Am. Compl. ¶ 46-47). Defendant EDO denied Plaintiff Chabria's requests for payment. (Am. Compl. ¶ 46).

On June 5, 2006, Plaintiff Chabria filed this action in the Franklin County Court of Common Pleas.  On June 30, 2006, the action was removed to this Court pursuant to 28 U.S.C. § 1441(a).  On November 16, 2006, Defendant EDO filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

## II.  MOTION TO DISMISS STANDARD

A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  All well-pleaded allegations must be taken as true and be construed most favorably toward the nonmoving party.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1356, at 296 (2d ed.1990).  The moving party is entitled to relief only when the complaint fails to meet this liberal standard.  *Id.*

On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard.  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  *Id.* at 437. (Quotes omitted).

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Id.*

### III.  DISCUSSION

As an initial matter, the parties agree that New York law governs.  (Am. Compl., Ex A at 8.9; Def.'s Mot. to Dismiss at 4; Pls' Memo. in Opp. at 1).

Plaintiffs seek payment of approximately $1,154,000.00 in unpaid royalties and assert five causes of action against Defendant EDO including: (1) breach of contract; (2) bad faith; (3) promissory estoppel; (4) fraud in the inducement; and (5) fraud.  Defendant EDO argues that each of Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  This Court will first address Defendant EDO's arguments that, based upon the Agreement, Plaintiff Chabria no longer has the right to bring an action on behalf of Zenix, Inc. or Zenix, Ltd.  Next, the Court will address Defendant EDO's arguments for dismissal of each of the five causes of action asserted by Plaintiffs in the order Plaintiffs have asserted them in the Amended Complaint.

7

**A.     Claims brought on behalf of Zenix, Inc. and Zenix, Ltd.**

Defendant EDO argues that the language of the Agreement requires this Court to dismiss with prejudice all claims brought by Zenix, Inc. and Zenix Ltd. against Defendant EDO. (*See* Mot. to Dismiss at 4).  Plaintiffs argue that there are inconsistencies in the Agreement which make it unclear whether Defendant EDO, if found liable, should be ultimately liable to Plaintiff Chabria directly and personally, or instead to Plaintiffs jointly. (Pls' Memo. in Opp. at 17).  Consequently, Plaintiffs maintain that this issue need not be resolved at this stage of the litigation. *Id.*  The Court agrees with Defendant EDO that claims cannot be brought on behalf of Zenix, Inc., but agrees with Plaintiffs with respect to Zenix Ltd.

Defendant EDO specifically relies on Sections 1.2(e), 6.1 and 6.4(e) of the Agreement to support its contention that claims cannot be brought on behalf of Zenix, Inc. and Zenix Ltd. (Mot. to Dismiss at 4).  Section 1.2(e) of the Agreement identifies that the business name "Zenix" was part of the intellectual property purchased by Defendant EDO in the transaction. (*See* Am. Compl., Ex. A at Section 1.2(e)).  Section 6.1 of the Agreement, titled "Trade Name" states that the Seller agrees to cease using the name "Zenix" and to take action to remove such words from the Seller's name. (Am. Compl., Ex. A at Section 6.1).   Finally, Section 6.4(e) of the Agreement states that the "Seller agrees to liquidate and dissolve Zenix, Inc. and Cellular Ceramics, Inc. as soon as practicable following Closing." (Am. Compl., Ex. A at Section 6.4(e)).  Plaintiffs point out that Section 2.5 of the Agreement expressly provides that Royalty payments "shall be paid by Buyer to Zenix, Ltd." and argue that this requires Zenix, Ltd. to have an ongoing existence so long as royalty payments are outstanding. (Pls' Memo. in Opp. at 17).

The Court finds, based upon the plain language of Section 6.4(e) of the Agreement, that suit cannot be brought on behalf of Zenix, Inc.  Section 6.4(e) of the Agreement required

Plaintiffs to liquidate and dissolve Zenix, Inc. "as soon as practicable following Closing." As a matter of law, the Court finds that sufficient time has passed such that Zenix, Inc. should no longer be in existence under the terms of the Agreement.

The Court comes to the opposite conclusion with respect to Zenix, Ltd. Under Section 2.5 of the Agreement, as Plaintiffs have pointed out, Zenix, Ltd. was intended to survive the execution of the Agreement and was to be the entity to which Defendant EDO paid royalties to. This conclusion is consistent with the Agreement's omission of Zenix, Ltd. from Section 6.4(e)'s listing of entities to be liquidated and dissolved. The Court, in reaching its conclusion that Zenix, Ltd.'s claims shall survive Defendant's motion to dismiss, has not ignored Section 6.1 of the Agreement which essentially requires Zenix, Ltd. to change its name so that the word "Zenix" no longer appears in the title. (*See* Am. Compl., Ex. A at Section 6.1). Instead, the Court finds that because Zenix Ltd., unlike Zenix, Inc., is still entitled and even required by the Agreement to be in existence, claims can be brought on its behalf whether or not the Plaintiffs have changed the entity's name to comply with Section 6.1 of the Agreement.

In conclusion, the Court finds that all claims brought on behalf of Zenix, Inc. shall be dismissed with prejudice. Claims brought on behalf of Zenix, Ltd. shall survive this initial attack by Defendant EDO. Hereinafter, "Plaintiffs" shall be used to refer collectively to Plaintiff Chabria and Plaintiff Zenix, Ltd. The Court declines at this stage of the litigation to make a determination as to whether Defendant EDO, if found liable, would ultimately be liable to Plaintiff John Chabria directly and personally as opposed to Plaintiffs jointly. The Court will now turn to Defendant EDO's arguments in favor of dismissal of each of the five causes of action asserted by Plaintiffs.

**B.     Breach of Contract (Count One) and Breach of the Duty to Act in Good Faith (Count Two)**

The Court addresses Counts One and Two of the Amended Complaint together because the allegations underlying each Count are essentially the same.

Plaintiffs allege in Count One that Defendant EDO is required under the Agreement to pay a total of $2 million for Zenix's assets, of which $1.2 million was required to be paid in the form of royalty payments, and that Defendant EDO has breached the Agreement by failing to pay $1,154,000.00 the alleged amount of royalty payments remaining due. (Am. Compl. ¶¶ 50, 52 and 54). Additionally, Plaintiffs allege in Count One that Defendant EDO breached its contractual duties by failing to take necessary steps in order to bring gross sales/royalties from the Zenix product line into existence. (Am. Compl. ¶ 53). Similarly, in Count Two, Plaintiffs allege that various acts and omissions by Defendant EDO, which ultimately resulted in decreased and then non-existent gross sales/royalties, breached Defendant EDO's implied covenant of good faith and fair dealing. (Am. Compl. ¶¶ 58-59). Finally, Plaintiffs allege in Count Two that Defendant EDO breached its implied covenant of good faith and fair dealing by "concocting a plan to dissolve the Zenix product line and place it in 'cold storage' specifically to avoid having to pay the balance owed pursuant to the [Agreement]." (Am. Compl. ¶ 59).

Defendant EDO argues that Count One should be dismissed "because EDO has fully performed under the Agreement and, as such, Chabria cannot show that EDO breached the Agreement." (Mot. to Dismiss at 4-5). Defendant EDO, to support its contention that it has fully performed, claims that the terms of the Agreement do not amount to a mandatory requirement that EDO pay $1.2 million in royalties (Mot. to Dismiss at 5-9). Defendant EDO argues Count Two should be dismissed because (1) it is duplicative of Count One; (2) EDO did not have a

10

duty to use reasonable efforts to sell the Zenix product line; and (3) Plaintiffs have failed to allege any facts constituting bad faith. (Mot. to Dismiss at 9-11).  Though the Court agrees with Defendant EDO that the terms of the Agreement do not amount to a mandatory requirement that EDO pay $1.2 million in royalties, the Court disagrees that this means Defendant EDO fully performed under the Agreement as EDO contends.  Instead, the Court finds that Defendant EDO did have a duty under the Agreement to use reasonable efforts to sell the Zenix product line and that Plaintiffs have alleged facts sufficient to state a claim for breach of that duty.  The Court reaches these conclusions for the following reasons.

### 1. There is no mandatory requirement to pay $1.2 million in royalties

The Court finds that Sections 2.4(a) and 2.5 of the Agreement, the Sections governing royalty payments, are unambiguous and do not require Defendant EDO to pay Plaintiffs a mandatory $1.2 million in royalties.  Contract interpretation is a matter of law and in determining whether a contract is ambiguous, the court's inquiry is confined to the contract itself.  *Leslie Fay, Inc. v. Rich*, 478 F.Supp. 1109, 1113 (S.D.N.Y. 1979); s*ee also Jabara v. Songs of Manhattan Island Music Co.*, 1989 WL 16614, at *5 (S.D.N.Y. 1989)("[t]he search for ambiguity, of course, must be conducted within the four corners of the writing").

Section 2.4(a) provides in relevant part:

> In addition to the Purchase Price, Buyer shall pay Seller a royalty ("Royalty") in the amount of five percent (5%) of the Gross Sales From the Zenix Product Line ([defined in § 2.4(b) of the agreement]) sold by Buyer from and after Closing; provided, the obligation to pay the Royalty shall terminate at such time as the aggregate amount of Royalty paid to Seller equals $1,200,000.  The Royalty shall be paid to Seller quarter-annually within 25 days after the calendar quarter in which it is earned.

(Am. Compl., Ex A at Section 2.4(a)).  Pursuant to Section 2.4, when Defendant EDO sold the Zenix product line, Defendant EDO was to pay Plaintiffs 5% of the Gross Sales up to an amount

of $1.2 million.  Thus, the $1.2 million figure served as a ceiling on the amount of royalties Defendant EDO could pay to Plaintiffs rather than a floor as is Plaintiffs' contention.

The Court also rejects Plaintiffs' contention that Section 2.5 of the Agreement confirms that Defendant EDO is required to pay Plaintiffs a total of $1.2 million in royalties. (*See* Pls' Mot. in Opp. at 3).  Section 2.5 provides: "Seller stipulates and agrees that the total amount of the Purchase Price and the Royalty *due hereunder* shall be paid by buyer to Zenix, Ltd. . . . ." (Am. Compl., Ex. A at Section 2.5) (emphasis added).  As Defendant EDO points out, Plaintiffs fail to take note of the critical language "due hereunder."  Section 2.5 of the Agreement does not obligate Defendant EDO to pay anything that is not required by the contractual language of the Agreement.  Since the unambiguous language of Section 2.4 does not require Defendant EDO to pay Plaintiffs $1.2 million in royalties, Section 2.5 cannot articulate a duty on the part of Defendant EDO to do so.

The Court must also reject Plaintiffs' attempts to introduce extrinsic or parol evidence for the purpose of showing that it was the intention of the parties to create a minimum amount of royalties due or to create ambiguity.  Extrinsic and parol evidence cannot be admitted to show that the intention of the parties was different than the unambiguous terms of the contract. *W.W.W. Assocs., Inc. v. Gianocontieri*, 77 N.Y 2d 157, 162 (1990).  Nor can extrinsic or parol evidence be used to create ambiguity.  *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 98 F.Supp.2d 498, 506 (S.D.N.Y. 2000); *S.Rd. Assocs. v. IBM*, 4 N.Y.3d 272, 278 (2005).  The Court has found that the terms of the royalty provision are clear and unambiguous.

Consequently, the Court must reject Plaintiffs' attempts to introduce parol or extrinsic evidence to show the parties' intention was to sell the assets of Zenix for the sum of

$2,000,000.00.  Likewise, the Court must reject Plaintiffs' attempts to introduce parol evidence by an EDO employee in order to create ambiguity in the Agreement.

In conclusion, the Court finds that the terms of the Agreement are unambiguous and do not amount to a  mandatory requirement that EDO pay $1.2 million in royalties.  Thus, Defendants' Motion to Dismiss Counts One and Two is **GRANTED in part** to the extent Counts One and Two of the Amended Complaint seek to hold Defendant EDO liable for breach of contract under the theory that Defendant EDO failed to pay the full $1.2 million in royalties as mandated by the terms of the Agreement.  As discussed *infra* (at Section III.B.2), however, Counts One and Two of the Amended Complaint remain to the extent that Counts One and Two seek to hold Defendant liable for breach of contract for failing to use reasonable efforts to sell the Zenix product line.

> **2.      Defendant EDO had a duty to use reasonable efforts to sell the Zenix product line**

Counts One and Two of the Amended Complaint allege that Defendant EDO breached its contractual duties by failing to make reasonable efforts to sell the Zenix Product line. (*See* Am. Compl. ¶¶ 53, 58-59).  Defendant EDO argues that Plaintiffs' claims must fail because the "Agreement included no language that EDO must use best or reasonable efforts, and such a responsibility cannot be implied." (Mot. to Dismiss at 10).  This Court disagrees.

Under New York law, "all contracts imply a covenant of good faith and fair dealing in the course of performance."  *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).  In particular, the covenant prevents a party to the contract from "destroying or injuring the right of the other party to receive the fruits of the contract."  *Jennifer Realty Co.*, 98 N.Y.2d at 153 (*quoting Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (1933)).

The implied covenant cannot conflict with the express terms of the contract. *Id.* But as recognized by Judge Cardozo, "[t]he law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal." *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 91 (1917). The covenant of good faith and fair dealing encompasses "any promises [that] a reasonable person in the position of the promisee would be justified in understanding were included." *Jennifer Realty Co.*, 98 N.Y.2d at 153 (*quoting Rowe*, 46 N.Y.2d at 69).

For example, New York courts have held that a promise to pay royalties resulting from an exclusive agency necessarily implies a promise to use best or reasonable efforts to bring such revenues and royalties into existence. *See, e.g., Morris v. Putnam Berkley, Inc*., 687 N.Y.S.2d 139, 140 (N.Y.A.D. 1 Dept., 1999) ("Since the contract called for plaintiff to be compensated, in large measure, by royalties . . ., the court properly found an implied promise on defendant's part to use its best efforts . . . and, accordingly, that defendant's decision not to market or distribute... could constitute a breach of an implied covenant of good faith and fair dealing."); S*ee also Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88 (1917) (where parties entered into agreement for the exclusive right to sell or license designs in return for royalties, it is proper to imply a promise to use all reasonable efforts to market such designs); *Mellencamp v. Riva Music, Ltd.,* 698 F.Supp. 1154, 1157 (S.D.N.Y. 1988) ("[w]hen the essence of a contract is the assignment or grant of an exclusive license in exchange for a share of the assignee's profits in exploiting the license, these principles imply an obligation on the part of the assignee to make reasonable efforts to exploit the license").

In the case at bar, the Agreement gave Defendant EDO an exclusive right to license, manufacture and distribute the Zenix product line. In return, Plaintiffs, like the *Morris* plaintiff,

14

were to be compensated with cash and also in large measure, by royalties.  The Agreement's

royalty provision exists for the exclusive benefit of Plaintiffs[1] and does not call for a minimum

royalty payment.  In addition, pursuant to the Agreement's six-year non-compete provision,

Plaintiffs were prohibited from engaging in any business activity that was substantially the same

as, or competitive with, Defendant EDO's business or involved in any way with Zenix's assets.

(Am. Compl., Ex. A at Section 6.4).  Based upon these circumstances, the Court finds that

Defendant EDO did indeed have a duty to use reasonable efforts to sell the Zenix product line.[2]

Defendant EDO, citing various examples, argues that it did in fact engage in reasonable

efforts to sell the Zenix product line. (*See* Def's Mot. to Dismiss at 11).  However, Plaintiffs'

Amended Complaint contains several factual allegations that, if proven, support a claim for the

breach of the implied covenant of good faith and fair dealing. (*See, e.g.,* Am. Compl. at ¶¶ 1, 15,

---

[1]Defendant EDO, in support of its contention that it had no duty to use reasonable efforts, seeks to rely on *HML Corp. v. General Foods Corp.*, 365 F.2d 77 (1966).  The Court finds that Defendant EDO's reliance on *HML* is misplaced.   In *HML*, the plaintiff-seller sold the trademarks, patent, and process for making salad dressing.  The seller also agreed to provide 85% of the defendant-buyer's requirements in salad dressing production for thirty-two months. *Id.* at 79.  After four months, the buyer claimed the marketing of the salad dressing was unprofitable and stated it would not need any further production. *Id.*  The *HML* court held that the rule requiring best efforts was inapplicable to the supply agreement because "the primary purpose of the Supply Agreement was for the ***benefit of the defendant[-buyer***] so that it would have a ready source of supply of the product in accordance with its requirements."  *Id.* at 80 (emphasis added).  In the present case, the Agreement's royalty provision was not for the benefit of the buyer as it was in *HML*, but instead was for the sole benefit of Plaintiffs and was intended by the parties to serve in part as compensation for Plaintiffs' sale of the Zenix product line and agreement not to compete for six years.

[2]Further, if Defendant EDO's suggested construction of its duty of good faith and fair dealing were adopted, Defendant EDO could have shut down the Zenix product line immediately after signing the Agreement rendering the Agreement's royalty provisions illusory in violation of the established rule of contract construction that a contract should be construed to give effect to all of the contract's provisions. *See e.g.*, *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 374 (2006).

17, 27, 28, 30-36, 39-46, 53, 58-59).  At this stage of the litigation, the Court must accept as true the well-pleaded facts set forth in the Amended Complaint.  Accordingly, Defendant EDO's Motion to Dismiss Counts One and Two is **DENIED in part** to the extent Plaintiffs' Counts One and Two seek to hold Defendant EDO liable for breach of contract for failing to use reasonable efforts to sell the Zenix product line in violation of the implied covenant of good faith and fair dealing.

### C.      Promissory Estoppel (Count Three)

In Count Three, Plaintiffs allege that Defendant EDO promised to "market, produce, and sell the Zenix product line and generate revenue through the sale of Zenix products in order to pay the total amount of $2,000,000.00 for the acquisition of Zenix's assets" and "to stay in business and maintain the Zenix line of business so that it would pay the total amount of $2,000,000 for the acquisition of Zenix's assets." (Am. Compl. ¶¶ 62-63).  Plaintiffs further allege that Plaintiff Chabria relied on promises such as these in "declining GHz Technologies' offer to purchase the assets of Zenix and accepting EDO's offer." (Am. Compl. ¶ 64).  Defendant EDO argues Count Three should be dismissed because causes of action for promissory estoppel are not available where a valid contract existed between the parties. (*See* Mot. to Dismiss at 12; Def's Reply at 10).  The Court agrees with Defendant EDO.

The elements of promissory estoppel are: "(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise."  *Rogers v. Town of Islip*, 230 A.D.2d 727, 727 (N.Y. App. Div. 1996).  The equitable doctrine of promissory estoppel is "a legal fiction designed to substitute for contractual consideration where one party relied on another without having entered

16

into an enforceable contract.  *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F.

Supp. 976, 993 (S.D.N.Y. 1989).  Accordingly, where the parties have entered into an

enforceable contract, a cause of promissory estoppel to contradict an unambiguous contract term

is not available.  *Id.; See also e.g.*, *Foxlev. Sotheby's, Inc.*, 893 F.Supp. 1224, 1234 (S.D.N.Y.)

(dismissing a cause of action for promissory estoppel because promissory estoppel is a quasi-

contractual claim and an express contract was in effect).

     In the present case, the parties agreed upon the terms surrounding Plaintiffs' sale of

Zenix's assets.  Those terms were set forth in the Asset Purchase Agreement entered into by the

parties on December 9, 1998, and attached to the Amended Complaint as Exhibit A.  The

unambiguous terms of the Agreement reveal that the purchase price for the acquisition of

Zenix's assets was not $2,000,000.00 as Plaintiffs assert in their promissory estoppel cause of

action.[3] (*See* Am. Compl., Ex. A).  Therefore, the Court cannot permit Plaintiffs' cause of action

for promissory estoppel because it directly contradicts the Agreement's unambiguous terms.

Accordingly, Defendant EDO's Motion to Dismiss as to Count Three is **GRANTED.**

**D.**    **Fraud in the Inducement (Count Four)**

     In Count Four, Plaintiffs allege that various representatives of Defendant EDO

knowingly misrepresented to Plaintiff Chabria that Defendant EDO had the manufacturing and

production capacity to meet the needs of the Zenix customer base and that it would keep the

Zenix product line in the marketplace in order to generate revenue. (*See* Am. Compl. ¶¶ 65-67

---

    [3]The purchase price provisions are set forth in Article II in the Agreement.  As
consideration for Zenix's assets, Plaintiffs agreed to accept $669,107.85, combined with the
payment of royalties as set forth in Section 2.4.  Though Defendant EDO had a duty to use
reasonable efforts to generate royalties (*see* discussion *supra* at Section III.B.2 of this Order), the
$1,200,000 figure in the Agreement's Section 2.4 served as a ceiling on the amount of royalties
Defendant EDO could pay to Plaintiffs rather than a floor as Plaintiffs contend.

under Count Four[4]).  Plaintiffs further allege that Defendant EDO made these false

representations for the purpose of inducing Plaintiff Chabria into accepting Defendant EDO's

offer to purchase Zenix's assets. (Am. Compl. ¶ 69).  Finally, Plaintiffs allege that Plaintiff

Chabria, in reliance on these false representations, (1) declined Ghz Technologies' offer to

purchase Zenix's assets and instead accepted Defendant EDO's; and (2) complied with the non-

competition terms of the Agreement. (Am. Compl. ¶¶ 70-71).  Defendant EDO argues that

Plaintiffs' fraudulent inducement claim should be dismissed because it was not brought within

the statute of limitations period.  (Mot. to Dismiss at 14).  Additionally, Defendant EDO argues

that Plaintiffs' fraudulent inducement claim must fail because Plaintiffs cannot satisfy all of the

requisite elements. (Mot. to Dismiss at 16).  The Court disagrees with Defendant EDO and finds

that Plaintiffs' fraudulent inducement claim is both timely and adequately plead.

Under New York law, an action for fraud may be brought within six years from the date

the cause of action accrued or two years from the time the plaintiff discovers the fraud.  New

York Civil Practice Laws and Rules § 213 provides in relevant part:

> The following actions must be commenced within six years:
>
> . . . 8.  an action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.

McKinney's CPLR § 213 (2004).  Significantly, New York's highest court has recognized that,

in the case of continuing wrongs, the "Statutes of Limitation do not begin to run until the

---

[4]Plaintiffs misnumbered the paragraphs in their Amended Complaint starting in Count Four where paragraph 63 follows paragraph 68 such that there are two paragraphs for the numbers 63, 64, 65, 66, 67 and 68.

continuing wrong has ceased or until the wrong has become 'complete.'" *Boland v. State of New York*, 30 N.Y.2d 337, 341 (N.Y. 1972).

In the present case, Plaintiffs' allegations of fraudulent inducement are continuing in nature.  Plaintiffs have alleged several instances of Defendant EDO misrepresenting its ability and/or level of commitment to generate gross sales/royalties.  Plaintiffs allege the earlier false representations induced Plaintiff Chabria to enter into the Agreement with EDO and decline other offers to Plaintiffs' detriment.  In addition, Plaintiffs allege Defendant EDO continued to make these aforementioned representations after the Agreement was executed, after it put the Zenix line into cold storage, and even after it acknowledged to Plaintiff Chabria in May, 2003, that it had ceased work on the Zenix line.  Plaintiffs further allege that these later and continuing misrepresentations were intended to, and did in fact, induce Plaintiff Chabria to continue complying with the Agreement's six-year non-compete provision and also to refrain from enforcing Plaintiffs' contractual rights.[5]  Therefore, based on the continuing nature of Plaintiffs' allegations, the Court finds that Plaintiffs' claim of fraudulent inducement is timely.

Defendant EDO argues that Plaintiffs' fraudulent inducement claim must fail because Plaintiffs "simply allege that EDO made a false promise to perform under the Agreement." (Mot. to Dismiss at 16).  Defendant EDO properly points out that general allegations that a party entered into a contract with the intention not to perform it are insufficient to support a claim for fraud. *See e.g., Hawthorne Group, LLC v. RRE Ventures,* 776 N.Y.S.2d 273 (2004); *Rochelle Assocs. v. Fleet Bank,* 645 N.Y.S.2d 798 (1996).  Instead, plaintiffs seeking to state a claim for

---

[5]For example, Plaintiffs allege that despite Defendant EDO's true intention to forever end production of the Zenix line, EDO adopted a plan to "power down" or put into "cold storage" the Zenix line so that it could avoid "deal[ing] with EDO's liability to John Chabria, since technically, the business was not closed." (Am. Compl. ¶ 41).

fraud must allege that they reasonably relied upon a misrepresentation knowingly and

intentionally made to them, and suffered resultant damages. *See e.g.*, *Gordon v. Oster*, 2007 WL

151700, *1 (N.Y.A.D. 1 Dept., January 23, 2007); *Lama Holding Co. v. Smith Barney, Inc.*, 88

N.Y.2d 413, 421 (1996).  The Court finds that Plaintiffs have sufficiently alleged these elements

and that Plaintiffs' claim for fraudulent inducement is sufficiently distinct from Plaintiffs' claim

for breach of contract. (*See supra* Court's discussion of Count Four's allegations).

Accordingly, Defendant EDO's Motion to Dismiss as to Count Four is **DENIED.**

**D.     Fraud (Count Five)**

In Count Five, Plaintiffs allege that EDO representatives made false representations that

EDO would maintain the Zenix product line in order to generate the revenue necessary to pay a

total of $2,000,000.00 for the acquisition of Zenix's assets. (Am. Compl. ¶¶ 75, 77 and 78).  In

addition, Plaintiffs allege that EDO representatives falsely represented "that EDO, above all

other manufacturers and/or companies, had the background, ability, funding and capacity to meet

the needs of Zenix's customer base." (Am. Compl. ¶¶ 77-78).  Plaintiffs allege that Plaintiff

Chabria "reasonably relied on these material misrepresentations." (Am. Compl. ¶ 79).  Plaintiffs,

however, fail in Count Five to set forth the nature of the alleged reliance or how the alleged

reliance resulted in damages.

The Court finds that Plaintiffs' conclusory allegation of reliance is insufficient to support

Count Five's fraud claim.  To the extent Plaintiffs seek to allege they relied on pre-Agreement

misrepresentations by entering into the Agreement with Defendant EDO, Count Five is

duplicative of Count Four.  To the extent Plaintiffs seek to allege the reliance occurred post-

execution of the Agreement, Count Five's fraud claim also fails because Plaintiffs have failed to

allege how such reliance resulted in damages or injury.  Accordingly, Defendant EDO's Motion to Dismiss as to Count Five is **GRANTED.**

### IV.  CONCLUSION

For all of the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant EDO's Motion to Dismiss (Doc. 21).

All claims brought on behalf of Zenix, Inc. shall be dismissed with prejudice.  Counts One and Two of the Amended Complaint remain pending to the extent those Counts seek to hold Defendant EDO liable for breach of contract for failing to use reasonable efforts to sell the Zenix product line in violation of the implied covenant of good faith and fair dealing.  In addition Count Four of the Amended Complaint remains pending.   All remaining Counts of the Amended Complaint are dismissed with prejudice.

The Clerk shall remove Document 21 from the Court's pending motions list.


**IT IS SO ORDERED.**


  **s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**