UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHN CHABRIA**, *et al.*,

      **Plaintiff,**

v.

**EDO WESTERN CORPORATION,**

      **Defendant.**

Case No. 2:06-cv-00543
**JUDGE SMITH**
**Magistrate Judge Abel**

## OPINION AND ORDER

Plaintiffs John Chabria ("Chabria") and Zenix, Inc. ("Zenix"), and Zenix, Ltd. (collectively "Plaintiffs"), have brought this action seeking payment of approximately $1,154,000.00 in unpaid royalties. Plaintiffs originally asserted New York common law causes of action for breach of express contract, breach of implied duty to act in good faith, promissory estoppel, fraudulent inducement, and fraud. Defendant EDO Western Corporation ("EDO") moved for dismissal of all claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 21). Some of Plaintiffs' claims survived the 12(b)(6) motion and remain pending. Defendant included in its answer to the amended complaint a counterclaim for breach of contract. (Doc. 28). Plaintiffs have moved to dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 32). For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion to Dismiss.

## I. FACTS

**A. Background**

In 1998 Zenix was a leading developer, manufacturer and seller of high-frequency microwave component parts to the defense, aerospace and telecommunications industry. (Am. Compl. ¶ 1). Prior to December 9, 1998, Plaintiff Chabria was the CEO of Zenix. *Id*. Defendant EDO is a defense contractor with its headquarters in New York City and its manufacturing facilities in Salt Lake City, Utah. (Am. Compl. ¶ 5).

In June of 1998 representatives of Defendant EDO approached Plaintiff Chabria to solicit the acquisition of Zenix by EDO. (Am. Compl. ¶ 8). During summer 1998, EDO representatives presented a proposal to Plaintiff Chabria for EDO to acquire Zenix's assets for the sum of $2,000,000 and represented that EDO was a company that had been in business for years and would continue to market produce and sell the Zenix product line in order to generate the revenue to pay the full amount due for the acquisition of Zenix's assets. (Am. Compl. ¶ 12). Defendant EDO representatives told Plaintiff Chabria that EDO was not in the practice of acquiring businesses to shut them down. (Am. Compl. ¶ 14). EDO representatives further represented that it had performed market research and, based on that research, EDO could guarantee that it would keep the Zenix product line in the marketplace to generate enough revenue to pay the full amount. (Am. Compl. ¶ 15). Later in 1998, Plaintiff Chabria attended a meeting at EDO headquarters in New York City where he was again assured of the $2,000,000 price, that EDO would keep the Zenix product line in operation in order to generate the full amount, and even that EDO would spend $6,700,000 after purchasing Zenix in order to promote, sell and produce Zenix products. (Am. Compl. ¶ 16-17).

When news of Defendant EDO's negotiations with Plaintiff Chabria reached the microwave component industry, Plaintiff Chabria received from one of Zenix's customers, GHz Technologies, a matching $2,000,000 offer to purchase Zenix's assets. (Am. Compl. ¶ 19). Relying on Defendant EDO's previously discussed representations, Plaintiff Chabria declined GHz's offer and agreed to enter an asset purchase agreement with Defendant EDO. (Am. Compl. ¶ 21).

On December 9, 1998, Plaintiffs and Defendant EDO became parties to an Asset Purchase Agreement ("Agreement") by which Defendant EDO contracted to purchase "substantially all of the assets" of Zenix, Inc. (*See* Am. Compl., Ex A). The Agreement stated that the purchase price for the assets shall be $669,107.85. (Am. Compl., Ex A at 2.1). Defendant EDO paid this amount to Plaintiffs plus $130,892.15 to Zenix's equipment suppliers to pay off existing equipment leases. (Am. Compl. ¶ 24-25). The Agreement also required Defendant EDO to pay Plaintiffs a royalty in the amount of five percent of the gross sales from the Zenix product line. (Am. Compl., Ex A at 2.4(a)). This obligation terminated "at such time the aggregate amount of Royalty paid to [Plaintiffs] equals $1,200,000." *Id*. Under the Agreement, Seller was required not to compete with Defendant EDO for six years after the closing of the sale. (Am. Compl., Ex A at 6.4).

Plaintiffs allege that after the execution of the Agreement, Defendant EDO's representatives continued to represent and promise Plaintiffs that EDO would continue to market, produce and sell the Zenix product line so that EDO could make the promised $1,200,000 in royalty payments. (Am. Compl. ¶ 27).

Prior to the Agreement, the Zenix plant in Columbus, Ohio supplied the critical microwave components for radar systems in the AWACS aircraft used by the U.S. Air Force,

U.S. Navy and NATO Fleet. (Am. Compl. ¶ 29).  In June 1999, over Plaintiff Chabria's objections,  Defendant EDO closed the Zenix Columbus plant and moved all the equipment to Salt Lake City.  (Am. Compl. ¶ 30).  Because the Salt Lake City facility was not ready or equipped for manufacturing at the time the Columbus plant was closed, manufacturing was stopped. (Am. Compl. ¶ 31).  This resulted in the total disruption of production and deliveries of products to former Zenix customers.  (Am. Compl. ¶ 34).

Additionally, Defendant EDO, over Plaintiff Chabria's warnings about the negative impacts on production capability, decided to change production formulas and processes and to dispose of an estimated $500,000 worth of finished inventory and an estimated $200,000 worth of custom-made tooling, fixtures, dyes, and molds located in Columbus. (Am. Compl. ¶ 32). Zenix's former customers responded by demanding that Defendant EDO use the original Zenix formulations and processes to manufacture the critical components, but Defendant EDO refused. (Am. Compl. ¶ 35).  Consequently, high-volume orders were cancelled. *Id*.

Around this same time, at Defendant EDO's direction, Plaintiff Chabria generated orders of over $20,000,000 worth of new requests for quotations from Zenix's customers for microwave product, but EDO's Salt Lake City plant was not properly equipped or staffed to provide the customers with sample products. (Am. Compl. ¶ 33).  Consequently, the customers chose other vendors. *Id*.

In February 2002, without notification to Plaintiff Chabria, Defendant EDO began its plan to remove the Zenix product line from production. (Am. Compl. ¶ 36).  In an internal memorandum dated February 20, 2002, Defendant EDO observed the downturn in the market and discussed options for responding to the downturn including a "power down strategy" in which the Zenix line would not be permanently shut down, but would be temporarily taken off of

the market. (Am. Compl. ¶ 38). In considering these options, one EDO representative noted that "there could be another $1,164k in royalty commission due to John [Chabria] depending on your view of the purchase agreement." *Id*.

In a May 2, 2002 letter, Defendant EDO notified Plaintiff Chabria that his employment would end on June 9, 2002, and reminded him not to compete until December 9, 2004. (Am. Compl. ¶ 40).

On June 25, 2002, an e-mail sent by an EDO employee confirmed that one advantage of the "power down" or "cold storage" of the Zenix line would be that Defendant EDO "will not have to deal with EDO's liability to John Chabria, since technically, the business is not closed." (Am. Compl. ¶ 41).

On or about July 18, 2002, Defendant EDO sent a letter to customers of the Zenix line informing the customers that the line "will not be available to the market until further notice." (Am. Compl. ¶ 42). From August 2002 through October 2002, Defendant EDO's representatives continued to represent and promise Plaintiff Chabria that EDO would continue to market, produce, and sell the Zenix product line so that it could make the remaining royalty payments. (Am. Compl. ¶ 43).

Thereafter, Defendant EDO dedicated space formerly used to produce Zenix products to a different product line. (Am. Compl. ¶ 44). Defendant EDO also shut down the evaluation and testing laboratory for Zenix's microwave products, discontinued microwave research and development activity, and laid off or transferred Zenix production personnel to other departments. *Id*. Finally, all of Zenix's customers were notified that the Zenix microwave products would not be made available after August 2002. *Id*.

In October 2005, Defendant EDO had not resumed production of the Zenix product line, and Plaintiff Chabria demanded payment of $1,154,000. (Am. Compl. ¶ 46-47). Defendant EDO denied Plaintiff Chabria's requests for payment. (Am. Compl. ¶ 46).

**B.     Procedural History**

On June 5, 2006, Plaintiff Chabria filed this action in the Franklin County Court of Common Pleas. On June 30, 2006, the action was removed to this Court pursuant to 28 U.S.C. § 1441(a). On November 16, 2006, Defendant EDO filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). This Court granted in part and denied in part Defendant's motion to dismiss. The Court dismissed Plaintiffs' claims for breach of contract to the extent that they sought to hold the Defendant liable for failure to pay royalties of $1.2 million under the agreement executed by the parties, but preserved Plaintiffs' breach of contract claims to the extent that they seek to hold the Defendant liable for failure to use reasonable efforts to sell the Zenix product line. The Court dismissed Plaintiffs' claims for promissory estoppel and fraud, but preserved Plaintiffs' claim for fraud in the inducement.

Following this Court's ruling on Defendant's motion to dismiss, Defendant filed an answer to Plaintiffs' amended complaint, along with a counterclaim for breach of contract. Plaintiffs now move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Defendant EDO's counterclaim for breach of contract. The matter has been fully briefed and is now ripe for review.

## II.     RULE 12(b)(6) STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the amended complaint as true. *See Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods.*, 705 F.2d at 155.

The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).

The Federal Rules of Civil Procedure provide that a pleading for relief shall contain "a short and plain statement of the claim, showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 12(b)(6) must be read in conjunction with Rule 8(a). 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 296 (2d ed. 1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id.*

Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, a court will not accept conclusions of law or unwarranted inferences of fact case in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964-65 (2007).[1] A "[p]laintiff's obligation to provide 'grounds' of their entitlement to relief

---

[1] In this recent *Bell Atlantic Corp.* case, the United States Supreme Court rejected the language previously used by the Court in *Conley v. Gibson*, providing that "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). *See Bell Atlantic Corp.*, 127 S.Ct. at 1969 (holding that the *Conley* "no set of facts" language "has earned its retirement" and "is best forgotten.").

requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action." *LULAC v. Bredesen*, 2007 U.S. App. LEXIS 20556, at *6 (6th Cir. 2007) (*citing Twombly*, 127 S. Ct. 1964-65). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Id.* (*citing Twombly* at 1965). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Id.* (*citing Twombly* at 1969).

### III. DISCUSSION

Plaintiffs argue that Defendant EDO has failed to allege that it has been harmed in any way by a material breach of the Asset Purchase Agreement. (Pl.'s Mot. to Dis. at 4). This Court agrees. The inquiry into the sufficiency of the Defendant's counterclaim involves an examination of Federal Rule of Civil Procedure 8(a), as well as New York law regarding breach of contract claims. The Court addresses each in turn.

### A. Federal Rule of Civil Procedure 8(a)

The Federal Rules of Civil Procedure dictate that a counterclaim must set forth, among other requirements, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule embodies the liberal pleading scheme envisioned by the drafters of the Federal Rules of Civil Procedure. A complaint need not set forth detailed factual allegations to survive a 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Supreme Court recently clarified what Rule 8(a) requires:

> A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.

*Bell Atl. Corp.*, 127 S.Ct. at 1964-65.

The Supreme Court further clarified this standard by stating that the Rule requires that the counterclaim include "enough factual matter (taken as true) to suggest that" the claimant's assertion is true. *Id.* at 1965.

The Defendant's counterclaim states that, "Counter-Defendants failed to perform all of their obligations under the Agreement, constituting a breach thereof. (Answer and Countercl. at ¶ 9). The counterclaim further specifies Plaintiffs' alleged breach: "Counter-Defendants failed to dissolve Zenix, Inc. after the closing." (Answer and countercl. at ¶ 10.) The counterclaim also states, "Counter-Defendants failed to remove the name Zenix from the Zenix entities as required." (Answer and Countercl. at ¶ 11).

Defendant EDO's assertions are true. As this Court has acknowledged, Plaintiff Chabria failed to liquidate and dissolve Zenix, Inc., and failed to cease using the name Zenix in connection with Zenix Ltd., the entity that survived the Asset Purchase Agreement. There is thus enough factual matter to suggest that Defendant's assertion is true with regard to Plaintiffs' breach of the Agreement. There is not, however, any factual matter in the counterclaim to suggest that Defendant's assertion is true with regard to damages, a necessary element of a claim for breach of contract under New York Law, as discussed below. Defendant admits that it has "no way of specifically describing or quantifying its alleged damages." (Def.'s Memo. in Opp. at

-9-

4). It is difficult to grasp how Defendants could admit they have no facts regarding damages on the one hand, and on the other assert that the counterclaim sets forth a sufficient factual basis regarding damages.

The only semblance of an assertion of damages contained in the counterclaim is the Defendant's request for an unspecified amount of damages, "but in no event less than $75,000.00." (Answer and Countercl. at 15). There is a difference between alleging damages in an amount which cannot yet be proved, and not alleging any damages at all. Defendant EDO has done the latter. The factual allegations contained in the counterclaim are not enough to "raise a right to relief above the speculative level," as required under *Bell Atlantic*. *Bell Atl. Corp.*, 127 S.Ct. at 1965.

Defendant's counterclaim fails to satisfy even the more lenient rule that preceded *Bell Atlantic*, under which "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). The counterclaim contains no direct or inferential allegations respecting damages, a material element of a cause of action for breach of contract under New York law.

Defendant has therefore failed to state a claim upon which relief can be granted, and Plaintiffs' motion to dismiss Defendant EDO's counterclaim is therefore **GRANTED**.

**B.    New York Law Regarding Breach of Contract Claims**

Defendant acknowledges that under New York law a party claiming breach of contract must allege damages resulting from the breach. (Def's Memo in Opp. at 2). Defendant EDO argues that its breach of contract claim should survive a 12(b)(6) motion because it need not

allege actual damages under New York law, since nominal damages are always available in breach of contract claims. (Def's. Memo. in Opp. at 4). Defendant is partially correct.

New York law clearly entitles a breached-against party to nominal damages. *See Manhattan Savs. Inst. v. Gottfried Baking Co.*, 286 N.Y. 398 (1941); *see also Magu Realty Co. v. Spartan Concrete Corp.*, 239 A.D.2d 469, 470 (1997). However, most New York courts that have recognized this entitlement to nominal damages have not done so in order to allow a claim to go forward absent other evidence of damages. In *Magu Realty*, the primary case on which Defendant relies for the proposition that a party may pursue a breach of contract claim without alleging actual damages, the court allowed the claim to go forward even though plaintiff had not demonstrated that it incurred actual damages resulting from the alleged breach. *Magu Realty Co. v. Spartan Concrete Corp.*, 239 A.D.2d 469, 470 (1997). Part of the reason that the court allowed the claim to go forward, however, was because "there remain[ed] triable material issues of fact with respect to the breach of contract cause of action." *Id.* In the present case, on the other hand, there remain no triable material issues of fact. Plaintiff Chabria has admitted that he failed to dissolve Zenix, Inc. and remove the Zenix name from Zenix, Ltd. There is therefore no reason for Defendant's counterclaim to proceed in the absence of specific factual allegations of damages. Mindful of New York law, however, the Court **GRANTS** Defendant nominal damages in the amount of $1.00, which suffices to "vindicate [defendant's] rights arising from the alleged breach of contract." *Magu Realty Co. v. Spartan Concrete Corp.*, 239 A.D.2d 469, 470 (1997); *see also Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc.*, 88 A.D.2d 461, 470 (1982) (awarding nominal damages for fraud and breach of warranty in the amount of $1.00).

Plaintiff Chabria alleges he is taking steps to correct his failure to comply with the terms of the Asset Purchase Agreement, though he has submitted no proof to that effect. The Court

hereby **ORDERS** Plaintiff Chabria to liquidate and dissolve Zenix, Inc. and discontinue using Zenix in connection with the entity formerly titled Zenix, Ltd.,  in compliance with the Asset Purchase Agreement.

## IV.    DISPOSITION

Based on the reasons above, Plaintiff Chabria is **ORDERED** to liquidate and dissolve Zenix, Inc., and to discontinue using the name Zenix, Ltd., in accordance with the Asset Purchase Agreement executed by the parties.

The Court **AWARDS** Defendant EDO nominal damages in the amount of $1.00 as a result of Plaintiff's failure to comply with the Asset Purchase Agreement.

The Court **GRANTS** Plaintiffs' Motion to Dismiss for failure to state a claim. Defendant's counterclaim shall be dismissed with prejudice.

This order provides judgment only with regard to Defendant EDO's counterclaim. Plaintiffs' claims remain pending.

The Clerk shall remove Document 32 from the Court's pending motions list.

**IT IS SO ORDERED.**

 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**